OPINION OF THE COURT
Cornelius J. O’Brien, J.
The defendant, Justice Alyakoub, a native of Ghana, Africa, and a resident of Philadelphia where he is a college student, was apprehended at Kennedy Airport on December 18, 1982 as he came through customs with more than 10 pounds of marihuana after a visit to his homeland. He was subsequently indicted for criminal possession of marihuana in the first degree (Penal Law, § 221.30), a class C felony.
On March 23, 1983, it was agreed between the defense attorney and the prosecutor that if the defendant pleaded guilty to the indictment, the prosecutor would recommend to the court that the defendant be sentenced to a “split” sentence of five years’ probation with six months’jail time. (Penal Law, § 60.01, subd 2, par [d].) After a conference, the court agreed to the plea bargain and the defendant pleaded guilty.
*471 Before sentencing, it was determined that the provisions of subdivision 4 of section 70.00 of the Penal Law ostensibly do not apply to marihuana cases and that if a prison term was to be imposed on this defendant, its minimum would have to be at least one year as mandated by the other subdivisions of section 70.00.
On April 21, 1983, the defendant was sentenced in accordance with the plea bargain to five years’ probation, six months of which was to be served in prison. Not to fulfill the plea bargain would, in this court’s judgment, be violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.
Subdivision 4 of section 70.00 of the Penal Law reads as follows: “Alternative definite sentence for class D, E, and certain class C felonies. When a person, other than a second or persistent felony offender, is sentenced for a class D or class E felony, or to a class C felony specified in article two hundred twenty, and the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that a sentence of imprisonment is necessary but that it would be unduly harsh to impose an indeterminate sentence, the court may impose a definite sentence of imprisonment and fix a term of one year or less.”
In 1976 when this statute was amended (L 1976, ch 480) to include class C felonies specified in article 220 of the Penal Law, marihuana offenses were included thereunder. Possession of one or more “preparations”, etc., of more than one ounce or of 100 or more cigarettes containing marihuana was a class C felony under former subdivisions 10 and 11 of section 220.09 of the Penal Law.
In 1977 (L 1977, ch 360), the Legislature passed the “Marihuana Reform Act”, the purpose being, according to the bill (§ 1), “to insure that the many people in New York who commit the conduct which this act makes a violation not be subject to unduly harsh sanctions.” Although marihuana continued to be defined under subdivision 6 of section 220.00 of the Penal Law,[1] all offenses involving marihuana were now grouped under the new article 221 of *472 the Penal Law. However, this article did not apply to other forms of cannabis. The possession and sale of concentrated cannabis, commonly known as “hashish”, a more dangerous and pernicious drug[2] continued to be proscribed by article 220.
As a result of what would appear to be a legislative oversight therefore, the law as it stands today would allow a person who is guilty of possession' of any amount of “concentrated cannabis” over an ounce (and it could be, for the sake of argument, 100 pounds) in violation of subdivision 10 of section 220.09 of the Penal Law to be sentenced to as little as one day in prison pursuant to subdivision 4 of section 70.00 of the Penal Law on a showing of undue harshness. On the other hand, a person such as the defendant here, convicted under the provisions of the so-called “Marihuana Reform Act” would have to serve at least a year.
The question before the court therefore is whether the incongruity which mandates a more severe punishment for this defendant than would be imposed on a similarly situated person in possession of the same drug in concentrated form, in conceivably a larger amount, renders subdivision 4 of section 70.00 of the Penal Law unconstitutional as violative of the Fourteenth Amendment to the United States Constitution.
As stated by Judge Gabrielli in Alevy v Downstate Med. Center of State of N. Y. (39 NY2d 326, 332):
“Traditional equal protection analysis is two tiered. Most classifications are subject to the lax standard of rationality which tests whether the challenged classification bears a reasonable relationship to some legitimate objective * * *
“Where, however, a statute affects a ‘fundamental interest’ or employs a ‘suspect’ classification, the strict scrutiny test has been applied.”
Judge Wachtler, in People v Whidden (51 NY2d 457, 460), states the law a little differently, as follows:
*473 “In evaluating whether a statute violates the equal protection clause a court normally applies a ‘rational basis’ test to determine whether the varied treatment of separate classifications of citizens ‘rests on grounds wholly irrelevant to the achievement of the State’s objective’ (McGowan v Maryland, 366 US 420, 425). Where a statute’s application differentiates on the basis of race, alienage or nationality, however, the classification is deemed suspect and a strict scrutiny test must be applied to determine whether the challenged law is ‘necessary to promote a compelling governmental interest’ (Shapiro v Thompson, 394 US 618, 634).
“Between those two tests, a third has developed to evaluate a constitutional challenge to a gender-based statute which ‘must serve important governmental objectives and must be substantially related to achievement of those objectives’ (Craig v Boren, 429 US 190, 197; see Califano v Webster, 430 US 313, 316-317).”
Chief Judge Cooke in Matter of Quinton A. (49 NY2d 328, 337) says that strict scrutiny is the proper test “only where the challenged law classifies persons along suspect lines, e.g., race, or where it impinges upon some fundamental constitutional right such as liberty”. However, where, as here, “only the extent and duration” of the deprivation of liberty are at issue, the rational basis test is to be applied.
In Matter of Malpica-Orsini (36 NY2d 568, 571) the Chief Judge stated: “Under traditional analysis, the equal protection clause does not deny to States the power to treat different classes of persons in different ways, but a classification must be reasonable, not arbitrary, and have a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike (Reed v Reed, 404 US 71, 75-76; Neale v Hayduk, 35 NY2d 182, 186).”
Thus in Quinton (supra, p 337), the inquiry was “whether it was rational for the Legislature to have afforded juveniles who commit crimes of violence against the elderly treatment disparate from those who perpetrate crime against the general populace”. And in People v *474 Parker (41 NY2d 21, 25) it was said that the rational basis test demands that “a legislative classification be rationally related to a legitimate State purpose”.
It is clear that in the case at bar, applying the rational basis test, there is no legitimate State purpose in affording different and discriminatory treatment to persons sentenced for offenses under article 221 of the Penal Law as opposed to those sentenced for offenses under article 220 for the commission of more serious crimes of the same general nature. The violation of the equal protection clause is a patent one, particularly when one considers the unreasonableness of allowing a person in possession of concentrated cannabis more favorable treatment than another person in possession of the same or a smaller amount of ordinary cannabis. This being so, it would be proper fór a court of first instance to declare subdivision 4 of section 70.00 of the Penal Law unconstitutional. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, and cases cited therein.)
Another reason why it is appropriate for this court to take such action is that it is important that the issue be resolved, particularly by the courts in Queens County, where, because of the existence of two international airports, hundreds of cases involving possession of marihuana in violation of section 221.30 of the Penal Law are prosecuted each year. The problem has been extant for almost six years since the passage of article 221 of the Penal Law, but has not yet been subjected to appellate scrutiny. As early as February, 1978, only a few months after article 221 went into effect, Justice Moses Weinstein, then Administrative Judge of Queens County, called the oversight to the attention of the Assembly Judiciary Committee. However, no legislation has been enacted rectifying the problem.
This court is well aware that, especially as a court of first instance, it should treat this matter with considerable trepidation. As stated in Matter of Malpica-Orsini (supra, p 570): “We approach the constitutional testing of this statute «/ith certain well-established principles in mind: that a legislative enactment carries with it an exceedingly strong presumption of constitutionality; that, while this presump *475 tion is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt; that every intendment is in favor of the statute’s validity; that the party alleging unconstitutionality has a heavy burden; and that only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality. Nor may courts substitute their judgment for that of the Legislature as to the wisdom and expediency of the legislation.”
With regard to subdivision 4 of section 70.00 of the Penal Law, however, there would appear to be no doubt of its unconstitutionality unless it is read to include class C felonies specified in article 221 of the Penal Law. In fact, the obvious legislative intent was to include these offenses and they were excluded only because of a palpable legislative oversight.
It is true that “[statutes that violate equal protection are not usually read expansively unless there is a strong public policy reason for doing so” (Greschler v Greschler, 71 AD2d 322, 328). There is a presumption, however, that the Legislature did not intend a statute to have an unjust effect. “[A]nd, unless the language forbids, it must be given an interpretation and application consistent with such presumption. The Legislature is not lightly to be charged with enacting a statute which will operate harshly or unjustly; and, if a statute apparently has such effect, some other construction is to be sought if possible.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 146, p 298.)
The Supreme Court has indicated in Orr v Orr (440 US 268, 272) that an equal protection infirmity in a statute can be cured “by extending benefits to the previously disfavored class”. As stated by Justice O’Connor in Childs v Childs (69 AD2d 406, 419): “Such a construction is consistent with the traditional rule that where a statute has been found to violate' the equal protection clause, courts will traditionally read into it the improperly excluded class (see, e.g., Califano v Westcott, 443 US [76] * * * aid to dependent children benefits; Califano v Goldfarb, 430 US 199, Social Security Act survivorship benefits; Weinberger v Wiesenfeld, 420 US 636, supra, same; Frontiero v Richardson, 411 US 677, supra, armed forces fringe benefits; Levy v Louisiana, 391 US 68, wrongful death *476 actions; Matter of Passante v Walden Print. Co., 53 AD2d 8, 13, workers’ compensation survivorship benefits).”
Accordingly, this court construes subdivision 4 of section 70.00 of the Penal Law as including within its ambit those persons sentenced for class C felonies specified in article 221 of the Penal Law. Being of the opinion that a sentence of imprisonment was necessary, but that it would have been unduly harsh to impose an indeterminate sentence, the defendant was therefore sentenced to imprisonment for six months, the sentence of imprisonment to run concurrently with, and to be a condition of, a sentence of five years’ probation under the provisions of section 60.01 (subd 2, par [d]) of the Penal Law.

. “ ‘Marihuana’ means ‘marihuana’ or ‘concentrated cannabis’ as those terms are defined in section thirty-three hundred two of the public health law”.

. See, e.g., Woodhouse & Webb, The Drug Atlas (Midwest Research Inst, 1974), p VI.